"O"

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOBBY THOMAS, JR. | Case No. CV 05-5175 AN |
| Plaintiff, | MEMORANDUM AND ORDER |
| v. | |
| JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

## I. **INTRODUCTION**

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Both parties have consented to proceed before the Magistrate Judge. Pursuant to the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding issues concerning remand and/or immediate payment of benefits ("JS").

/ / /

/ / /

1

## II. BACKGROUND

2  Plaintiff was born on October 20, 1959, and was 45 years old at the time of the

3  administrative hearing. [Administrative Record ("AR") at 18, 214.] Plaintiff completed

4  high school and has no past relevant work experience. [AR at 18, 22.]

5  Plaintiff filed applications for DIB and SSI on July 7, 2003.[1/] [AR at 18.] Plaintiff

6  claims that he has been disabled since October 27, 2002, due to mental problems,

7  depression, and injuries to his leg, knee, and back. [AR at 18.] Plaintiff's applications

8  were denied at the administrative level. [AR at 33-36.] At Plaintiff's request, a hearing

9  was held before an Administrative Law Judge ("ALJ") on August 26, 2004. [AR at 223-

10  42.] On October 28, 2004, the ALJ issued a decision denying Plaintiff's applications for

11  benefits. [AR at 17-25.] When the Appeals Council denied review, the ALJ's decision

12  became the final decision of the Commissioner. [AR at 6-8.] Plaintiff then commenced

13  this action for judicial review.

14

15

## III. DISCUSSION

16  **A.   Standard of Review**

17  This Court must review the record as a whole and consider adverse as well as

18  supporting evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The

19  Commissioner's final decision affirming an ALJ's decision that a claimant is not disabled

20  must be upheld if the ALJ's findings are supported by substantial evidence in the record

21  and the proper legal standards were applied. *See Curry v. Sullivan*, 925 F.2d 1127, 1129

22  (9th Cir. 1990). The harmless-error rule applies. *Id.* at 1131. "Substantial evidence

23  means more than a mere scintilla, but less than a preponderance." *Magallanes v. Bowen*,

24  881 F.2d 747, 750 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human*

25  *Services*, 846 F.2d 573, 576 (9th Cir. 1988). It is further defined as "such relevant

26  evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see*

27

28  [1/]   Plaintiff filed two previous applications for SSI and/or DIB. These applications
were denied. [AR at 17, 202-09.]

*also*, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971). The ALJ is responsible for determining credibility, resolving conflicting testimony, resolving ambiguities, and "is entitled to draw inferences 'logically flowing from the evidence.'" *Andrews*, 53 F.3d at 1039; *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir. 1996). Consequently, inferences and conclusions as the ALJ may reasonably draw from the evidence are upheld. *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). Likewise, an ALJ's findings are upheld where the evidence is susceptible of more than one rational interpretation. *Andrews*, 53 F.3d at 1039-1040.

To collect DIB or SSI benefits, Plaintiff must suffer from a "disability." 42 U.S.C. §§ 423(a)(1)(D); 1382(a). To be disabled within the meaning of the Act, a claimant must suffer from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A); 1382c(a)(3)(A). The impairment must be of "such severity that [the claimant] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). The claimant has the burden of showing that she or he is disabled. 42 U.S.C. §§ 423(d)(5); 1382c(a)(3)(H)(i); *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).

**B.**   **The Five-Step Sequential Analysis**

The Social Security Regulations use a five-step sequential analysis for making DIB and SSI disability determinations. 20 C.F.R. §§ 404.1520, 416.920. The first step asks whether the claimant is working. The second step asks whether the claimant has a "severe" impairment, which is defined as an impairment which "significantly" -- more than minimally -- limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). However, this step two determination is "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th

Page 3

1    Cir. 2001) (internal citations omitted).  The third step asks whether the claimant has an
2    impairment which meets or equals the criteria of any impairment identified in the
3    appendix to the Social Security Regulations commonly referred to as the "Listings." *Id*.

4        The fourth and fifth steps require that the ALJ assess the claimant's residual
5    functional capacity ("RFC").  RFC is a determination of a claimant's remaining abilities
6    to perform work.  20 C.F.R. §§ 404.1545, 416.945(a). In determining a claimant's
7    physical limitations, the ALJ considers the claimant's ability to lift weight, sit-stand,
8    push-pull, etc. 20 C.F.R. §§ 404.1545(b), 416.945(b).  Mental, environmental and other
9    limitations such as the ability to see and hear are also part of the RFC determination.  20
10   C.F.R. §§ 404.1545(c) and (d), 416.945(c) and (d).   A claimant's limitations are
11   categorized as either exertional or non-exertional; exertional limitations are those based
12   upon strength considerations alone. *Cooper v. Sullivan*, 880 F.2d 1152, 1156 (9th Cir.
13   1989).  Non-exertional limitations are unrelated to strength and include "mental, sensory,
14   postural, manipulative, and environmental limitations."  *Id*.  The exertional requirements
15   of work are classified as sedentary, light, medium, heavy and very heavy.  20 C.F.R. §§
16   404.1567, 416.967.

17       Once the RFC is determined, the fourth step asks whether the claimant can perform
18   his or her past relevant work; at this step the claimant also has the burden of proving he
19   or she is unable to perform past relevant work.

20       At the fifth step in the analysis, the burden shifts to the Commissioner to prove that
21   the claimant, based on his or her age, education, work experience, and residual functional
22   capacity, can perform other substantial and gainful work existing in the regional or
23   national economy.  20 C.F.R. §§ 404.1520, 416.920.  The Commissioner can satisfy this
24   fifth step burden by either (1) applying the Medical-Vocational Guidelines (the "Grids")
25   found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, or (2) taking the
26   testimony of a Vocational Expert ("VE"). *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th
27   Cir. 1988).  However, the Commissioner cannot rely upon the Grids and must use a VE
28   where the claimant's non-exertional limitations are 'sufficiently severe' so as to

1    significantly limit the claimant's ability to perform the full range of sedentary, light, or
2    medium work.  *Id*.

3         If the answer to any of the questions in the five-step analysis establishes the
4    claimant is or is not disabled, the evaluation ends.  20 C.F.R. §§ 404.1520(a), 416.920(a);
5    *see also Bowen v. Yuckert*, 482 U.S.  at 140.

6         In the decision denying benefits, the ALJ determined that Plaintiff had not engaged
7    in substantial gainful activity since his alleged onset date.  [AR at 19.]  While the ALJ
8    found that Plaintiff suffers from the severe impairments of arthritis of lumbosacral spine
9    and moderately advanced arthritis of both hips (with possible avascular necrosis and a
10   suspicious area involving the right iliac wing), the ALJ determined that Plaintiff's
11   impairments did not meet or equal one of the impairments in the Listings.  [AR at 19.]
12   In assessing RFC, the ALJ found that Plaintiff was capable of lifting and carrying 10
13   pounds frequently and 20 pounds occasionally, standing and walking four hours, and
14   sitting without restriction.  [AR at 22.]  The ALJ further found that Plaintiff could
15   occasionally walk on uneven terrain, work at heights, climb ladders, bend, kneel, stoop,
16   crawl, and crouch.  [AR at 22.]  Although the ALJ found that Plaintiff has no past
17   relevant work, the ALJ determined that Plaintiff was capable of performing a significant
18   number of jobs, including food/beverage order clerk and assembly worker (*e.g.*, optical
19   lens inserter).  [AR at 23-25.]

20   **C.**   **Analysis of Disputed Issues**

21        Plaintiff asserts that the ALJ erred by failing to properly evaluate:  (1) Plaintiff's
22   complaints of pain, exertional limitations, and use of medication; (2) Plaintiff's side
23   effects from medications; (3) the opinion of Plaintiff's treating physician; (4) Plaintiff's
24   mental impairment; (5) Plaintiff's subjective pain and exertional limitations; and (6) the
25   VE testimony.  The Commissioner disagrees.

26        **1.**   **Plaintiff's Subjective Complaints**

27        Plaintiff reported a variety of symptoms and limitations.  He complained of
28   suffering from depression, anxiety, seizures, severe and chronic pain in his back, hips,

1   legs, knees, feet and hands, and difficulty lifting, walking, and sitting. [AR at 93-95, 228-
2   36.] Plaintiff contends that the ALJ erred by failing to properly evaluate his complaints
3   of chronic pain, exertional limitations, and his use of medications. [JS at 3-4, 6-7, 15-16.]
4   Plaintiff's claim lacks merit.

5       In assessing credibility, "the ALJ may use 'ordinary techniques of credibility
6   evaluation,' such as considering the claimant's reputation for truthfulness and any
7   inconsistent statements in [his] testimony." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148
8   (9th Cir. 2001)(quoting *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)). If a claimant
9   produces objective medical evidence that he suffers from an ailment that could cause
10  pain, "the ALJ can reject the claimant's testimony about the severity of [his] symptoms
11  only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*,
12  80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ may not reject a claimant's statements
13  regarding his limitations solely because they are not supported by objective evidence.
14  *Tonapetyan*, 242 F.3d at 1147-48. However, "[w]here the evidence is susceptible to more
15  than one rational interpretation," the ALJ's conclusions must be upheld. *Morgan v.*
16  *Commissioner of Social Security*, 169 F.3d 595, 599 (9th Cir. 1999).

17      Here, the ALJ identified specific, clear and convincing reasons for discrediting
18  Plaintiff's testimony. For example, although Plaintiff complained of "severe" pain,
19  Plaintiff's medical treatment had been conservative. [AR at 21.] Surgical intervention
20  had not been recommended by Plaintiff's doctors. [AR at 20-21]; *Fair*, 885 F.2d at 604
21  (finding that claimant's allegations of persistent, severe pain and discomfort belied by
22  "minimal conservative treatment" and lack of hospitalization for evaluation of treatment
23  of alleged symptoms). And, although Plaintiff reported that he has suffered from
24  persistent depression since 1992, the record reflects that he did not seek mental health
25  treatment until some time in 2004. [AR at 131, 199-021.] While Plaintiff received some
26  level of treatment at the Augustus Hawkins Mental Health Center, he did not submit any
27  mental health treatment notes suggesting that Plaintiff suffered from a severe mental
28  impairment or had associated work-related restrictions. [AR at 199-201.] The ALJ was

1  permitted to draw rational inferences concerning Plaintiff's credibility based upon his

2  treatment history.  *Flaten v. Secretary*, 44 F.3d 1456, 1464 (9th Cir. 1995); *Fair*, 885

3  F.2d at 603 (inadequately explained failure to seek treatment may be sufficient to

4  discredit allegation of disabling pain).  Further, while the ALJ found that Plaintiff had

5  impairments that could reasonably be expected to produce pain, the ALJ found that

6  Plaintiff's claims of disabling pain were inconsistent with his ability to engage in a wide

7  range of household activities (*i.e.,* caring for his daughter, going to appointments,

8  attending school meetings, going for walks, grocery shopping, seeing friends and

9  relatives, and using the bus and train).  [AR at 20-21, 87-91]; *Light v. Social Security*

10  *Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(inconsistencies between testimony and

11  conduct may be considered in weighing a claimant's credibility).  Finally, the ALJ cited

12  a lack of objective medical evidence to substantiate Plaintiff's complaints of chronic and

13  severe pain.  [AR at 21]; 20 C.F.R. §§ 404.1529(c)(2)(explaining that the medical

14  evidence is a relevant factor in determining the severity of the claimant's pain and its

15  disabling effects) 416.929(c)(2)(same).

16      Plaintiff also claims that he experiences sleepiness and dizziness as side effects of

17  his medication.  [AR at 236.]   It is well settled that in assessing credibility, "[t]he ALJ

18  must consider all factors that might have a 'significant impact on an individual's ability

19  to work.'"  *Erickson v. Shalala*, 9 F.3d 813, 817 (9th Cir. 1993) (quoting *Varney v.*

20  *Secretary of Health & Human Services*, 846 F.2d 581, 585 (9th Cir. 1987), *relief*

21  *modified*, 859 F.2d 1396 (1988)).  Such factors "may include side effects of medications

22  as well as subjective evidence of pain."  *Erickson*, 9 F.3d at 818; *Varney*, 846 F.3d at 585

23  ("side effects can be a 'highly idiosyncratic phenomenon' and a claimant's testimony as

24  to their limiting effects should not be trivialized")(citation omitted).  Here, although the

25  ALJ did not specifically address Plaintiff's complaints of sleepiness and dizziness, the

26  ALJ considered the entire record, set forth specific reasons, applied the correct legal

27  standards, and based his evaluation of Plaintiff's credibility on substantial evidence in the

28  record.  Accordingly, Plaintiff's argument that the ALJ failed to properly consider the

Page 7

1  side effects from his medication is rejected.

2       **2.      Treating Physician's Opinion**

3       In June 2004, Plaintiff's physician, Aye Aye Win, M.D., completed a one-page

4  medical provider evaluation form on Plaintiff's behalf.  [AR at 193.]  Dr. Win reported

5  that Plaintiff suffers from discogenic disease (C5 and C6) with subluxation, moderately

6  advanced osteoarthritis of both hips with possible avascular necrosis, and a suspicious

7  area involving the right iliac wing, which could involve a destructive process.  [AR at

8  193.]  Dr. Win opined that Plaintiff has been disabled and unable to work since December

9  31, 1989.  [AR at 193.]  The record also contains radiological reports from Carl H.

10  Boatright, M.D. and Robert Murchison, M.D.  [AR at 115, 198.]  Dr. Boatright opined

11  that Plaintiff suffers from severe arthritis of both hips and splinting of the right spine

12  suggesting muscle spasm.  [AR at 115.]  Dr. Murchison found that Plaintiff has

13  moderately advanced arthritic change involving both hip joints.  [AR at 198.]  Plaintiff

14  contends that the ALJ failed to give proper weight to the findings of Drs. Win, Boatright

15  and Murchison.

16       An ALJ may disregard a treating physician's opinion whether or not that opinion

17  is contradicted. *Andrews*, 53 F.3d at 1041 (ALJ may credit opinion of nontreating source

18  based on independent clinical findings over treating physician's opinion)(citing

19  *Magallanes,* 881 F.2d at 751.  If the treating physician's opinion is contradicted, and the

20  opinion of a non-treating source is based upon independent clinical findings that differ

21  from those of the treating physician, the opinion of the non-treating source may itself be

22  substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041.  Where, on

23  the other hand, a non-treating source's opinion contradicts that of the treating physician,

24  but is not based on independent clinical findings, or rests on clinical findings also

25  considered by the treating physician, the opinion of the treating physician may be rejected

26  only if the ALJ gives specific, legitimate reasons for doing so that are based on

27  substantial evidence. *Id.*; *Morgan*, 169 F.3d at 600.

28       Here, in evaluating Plaintiff's physical limitations, the ALJ relied on the opinion

Page 8

of examining physician Lijun Liang, M.D. [AR at 20, 110-14.] Dr. Liang conducted a complete internal medicine evaluation of Plaintiff in September 2003. [AR at 110-14.] Consistent with the findings of Drs. Murchison and Boatright, Dr. Liang reported that x-rays of Plaintiff's lumbosacral spine revealed severe arthritis of both hip joints, with some question of early changes of avascular necrosis. [AR at 112.] Contrary to Dr. Win's opinion of disability, however, physical examination of Plaintiff did not reveal any significant abnormality, except for tenderness and decreased range of motion in the lower back. [AR at 113.] Based on his examination and clinical findings, Dr. Liang concluded that Plaintiff should be able lift and carry 10 pounds frequently and 20 pounds occasionally, walk and stand four hours in an eight-hour workday, sit unrestricted, and occasionally work at heights, climb ladders, bend, kneel, stoop, crawl, crouch, and walk on uneven terrain. [AR at 113.] As Dr. Liang's opinion is based on independent clinical findings, it provides substantial evidence upon which the ALJ properly relied. *See Andrews*, 53 F.3d at 1041 (ALJ may credit opinion of nontreating source based on independent clinical findings over treating physician's opinion)(citing *Magallanes*, 881 F.2d at 751).

The ALJ also provided specific, legitimate reasons to support rejection of Dr. Win's opinion. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1996). For example, the ALJ noted that Dr. Win's findings were not supported by his own records. [AR 20-21]; *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)(explaining that the ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Indeed, the record contains no progress or chart notes from Dr. Win. The ALJ also noted that Dr. Win's opinion appeared to be based on Plaintiff's subjective complaints, which the ALJ discounted. [AR at 21.] It is well settled that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602; *Fair*, 885 F.2d at 605. Thus, the ALJ provided sufficient reasons for rejecting Dr. Win's opinion.

### 3.   <u>Plaintiff's Mental Impairment</u>

At step two of the sequential analysis, the ALJ found that Plaintiff did not suffer from a severe mental impairment. [AR at 19.] The ALJ's step two finding is supported by substantial evidence. Neither treatment notes nor any other evidence in the record suggests that Plaintiff had any functional limitations due to a mental impairment. *See* 20 C.F.R. §§ 404.1520(c)(an impairment is severe only if it significantly limits an individual's abilities to perform basic work activities), 416.920(c); *see also Corrao v. Shalala*, 20 F.3d 943, 949 (9th Cir. 1994)(an impairment should be found to be "non-severe" when the evidence establishes merely a slight abnormality, with no more than minimal effect on ability to work).

Plaintiff contends that the ALJ should have developed the record further concerning his mental impairment. [JS at 11-12.] Plaintiff, however, fails to point to a single medical record that would have substantiated the severity of his mental impairment that was not considered by the ALJ. While an ALJ does have a duty to fully develop the record, *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991), this duty is only triggered when the record presents ambiguous or inadequate evidence to allow the ALJ to reach a decision. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). Here, the medical evidence in the record supports the ALJ's determination that Plaintiff's mental impairment was not severe. In August 2003, psychiatrist Nathan Lavid, M.D. conducted a complete psychiatric evaluation of Plaintiff. [AR at 131-34.] Dr. Lavid gave Plaintiff no diagnosis on Axis I, suggesting that Plaintiff had no clinical disorder or other condition that may be a focus of clinical attention. Diagnostic and Statistical Manual of Mental Disorders (4th ed.) ("DSM-IV") 27. Dr. Lavid also assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 65, indicating only mild symptoms or some difficulty with social and occupational functioning. DSM-IV at 32. Specifically, Dr. Lavid found that although Plaintiff was irritable and reported a history of depression, there were no changes in his ability to perform his normal activities of daily living and no symptoms of emotional distress. [AR at 133.] There was also no objective evidence

1   of cognitive deficits, perceptual disturbances or delusional disorders.  [AR at 133.]  Dr.

2   Lavid concluded that Plaintiff was able to focus attention, follow one and two part

3   instructions, remember and complete simple tasks, tolerate the stress inherent in the work

4   environment, maintain regular attendance, and work without supervision.  [AR at 133.]

5   Thus, the record in this case provides sufficient evidence to support the ALJ's

6   determination that Plaintiff's mental impairment was not severe.  The ALJ did not err in

7   failing to develop the record.

8          **4.      <u>Hypothetical Question To VE</u>**

9          Once a claimant proves he is unable to return to his past work, the burden shifts to

10  the Commissioner to prove the claimant can engage in other types of substantial gainful

11  work.  *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  The Commissioner may meet

12  this burden by posing a hypothetical to a VE.  *Magallenes*, 881 F.2d at 756 (9th Cir.

13  1989). The hypothetical must set out all of a claimant's limitations and restrictions.  *Id.*

14  The vocational expert's opinion about a claimant's residual functional capacity has no

15  evidentiary value if the assumptions in the hypothetical are not supported by the record.

16  *Id.*; *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

17         Plaintiff argues that the hypothetical question posed to the VE was incomplete

18  because it did not include restrictions relating to his side effects from medication and

19  pain.  [JS at 16-17.]  As discussed above, the ALJ's decision to discount Plaintiff's

20  subjective symptom testimony was supported by substantial evidence.  Therefore, the

21  ALJ was not required to incorporate into his hypothetical all of Plaintiff's subjective

22  complaints.  *See Embrey*, 849 F.2d at 422.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

### IV.  <u>CONCLUSION</u>

2     Accordingly, the Court finds the ALJ's determination of non-disability is free of

3 legal error and supported by substantial evidence in the record.  Therefore, Plaintiff's

4 request for an order directing the payment of benefits or remanding this case for further

5 proceedings is DENIED, and the Commissioner's request for an order affirming the

6 Commissioner's final decision and dismissing the action is GRANTED.  The clerk shall

7 enter judgment, close the file and terminate all pending motions.

8

9 DATED: May 9, 2006                    /s/ Arthur Nakazato
                                       ARTHUR NAKAZATO
10                                      UNITED STATES MAGISTRATE JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28